UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-14201-ALTMAN/Hunt

**MARK EUGENE DEFFENDALL**,

    *Plaintiff*,

*v.*

**SGT. KENNETH STINSON**, *et al.*,

    *Defendants.*

_____/

## ORDER

A jailer who exhibits "deliberate indifference to a known, substantial risk of serious harm to [a pretrial detainee] violates the Fourteenth Amendment." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (cleaned up), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). From October 20, 2014, through April 22, 2021, our Plaintiff, Mark Eugene Deffendall, was incarcerated at the Indian River County Jail as a pretrial detainee. *See* Joint Statement of Undisputed Facts ("Joint SOF") [ECF No. 79] ¶ 3. During this six-and-a-half-year stay, Deffendall alleges that the Jail's employees were deliberately indifferent to his safety by allowing a "known[ ] violent inmate" to attack Deffendall in his cell. *See* Amended Complaint [ECF No. 14] at 8. And (he adds) the Jail's staff was deliberately indifferent to his medical needs by refusing to follow an oral surgeon's "after care treatment plan[.]" *Id.* at 10. The Defendants have now moved for summary judgment on all of Deffendall's claims. *See* Motion for Summary Judgment ("MSJ") [ECF No. 81].[1] After careful review, we **GRANT in PART** and **DENY in PART** the MSJ.

---

[1] The MSJ is fully briefed. *See* Deffendall's Response in Opposition to Defendants' Motion for Final Summary Judgment ("Response") [ECF No. 86]; Defendants' Reply in Support of Motion for Summary Judgment ("Reply") [ECF No. 88].

## THE FACTS[2]

### I.      The Eddie Gibson Attack

On April 20, 2017, Eddie Gibson, an inmate at the Indian River County Jail, "was being transferred out of disciplinary confinement" and back into the Jail's general population—specifically, into the same cell Deffendall was inhabiting.  Deffendall's Statement of Material Facts ("Deffendall's SOF") [ECF No. 85] ¶ 3; *see also* Defendants' Response to Plaintiff's Statement of Material Facts ("Defendants' Response SOF") [ECF No. 87] ¶ 3 ("Undisputed but immaterial."). Gibson was "loudly protest[ing]" because he "wanted to return to the cell from which he was transferred." Deffendall's SOF ¶ 2; *see also* Defendants' Response SOF ¶ 2 ("Undisputed but immaterial."). Sergeant Stinson, Deputy Bryant, Deputy Brown, and Deputy Hamilton (the "Failure to Protect Defendants") were all present while Gibson was being transferred. Deffendall's SOF ¶ 4; *see also* Defendants' Response SOF ¶ 4 ("Undisputed but immaterial.").

What happened next is hotly contested. Deffendall alleges that, as Gibson and the Failure to Protect Defendants approached his cell, Gibson "verbally threatened Deffendall at least three times." Deffendall's SOF ¶ 5; *see also* Deffendall Deposition [ECF No. 85-1] at 68 ("Q: How many times did [Gibson] threaten you? A: At least three. . . . Q: Can you do your best to remember— A: Yeah, 'I'll beat your ass, I'll kick your ass, I'll break your jaw,' I don't know, something like, you know, those things. Just threatening physical harm, let's put it that way."). In their depositions, however, the Failure

---

[2] "The facts are described in the light most favorable to the non-moving party." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016) (Proctor, J.); *see also Cox Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)).

to Protect Defendants remembered that Gibson was "speaking with the inmates in that cell," but they could not recall what Gibson was saying or to whom. *See* Hamilton Deposition [ECF No. 85-2] at 43 ("Q: Is it possible that Mr. Gibson was speaking with inmates in that cell? A: It's possible. Q: Do you recall any of what they were saying? A: I do not."); Bryant Deposition [ECF No. 85-4] at 36 ("Q: Did [Gibson] say anything? A: I remember him speaking [sic] something but I don't remember specifically what he was saying."). Deffendall also testified that, while Gibson was still restrained, he tried to lunge at Deffendall. *See* Deffendall Deposition at 65 ("Gibson lunged at me then and then Brown pulled him back out and told him 'Let me take these cuffs off first.'").

What's undisputed, however, is the outcome. As soon as Gibson was placed in the cell—and just after his restraints were removed—he immediately struck Deffendall in the face. *See* Joint SOF ¶ 4 ("Deffendall was attacked by inmate Edward Gibson on April 20, 2017."); *see also* Deffendall's SOF ¶ 9 ("Gibson punched Deffendall in the face as hard as he could."); Defendants' Response SOF ¶ 9 ("Undisputed to the extent Gibson struck Deffendall in the facial area."). Gibson was arrested for battery on a detainee, in violation of FLA. STAT. § 784.082(3). *See* Arrest Affidavit [ECF No. 85-5] at 3 ("I then watched the jail's security footage of the incident. I observed on the footage the four Deputies removing Gibson's [restraints]. As soon as the restraints were removed, Gibson approached Deffendall and struck him once.").

## II.   Deffendall's Tooth Extraction

Around August 2020, Deffendall began to complain about pain in one of his teeth. *See* Deffendall Deposition at 105. Deffendall's treatment was handled by at least two of the Jail's licensed medical nurses, Nurse Jones and Nurse Goines—both of whom were supervised by Lieutenant Nusser (together, the "Medical Indifference Defendants"). *See* Joint SOF ¶¶ 8, 11 ("In December 2020, Lt. Nusser was the supervisor over the medical unit as it relates to the security aspect of the operation."). Defendant Nusser had the power to discipline the nurses if they didn't follow the Jail's

3

directives. *See* Deffendall's SOF ¶ 22 ("At all relevant times, Lieutenant Larry Nusser was Rosemary

Jones's supervisor and was responsible for, among other things, disciplining her."); *see also* Defendants'

Response SOF ¶ 22 ("Undisputed."). But Defendant Nusser "does not have a medical license" and

"does not have medical training," so the Jail's "health authority" is Dr. Silverman. Joint SOF ¶¶ 10,

12. Dr. Silverman had previously implemented a "dental pain protocol," by which all inmates would

be provided 400 mg of ibuprofen *or* two tablets of Tylenol[3] after dental procedures. *See* Defendants'

Statement of Material Facts ("Defendants' SOF") [ECF No. 80] ¶ 11; Jones Deposition [ECF No. 77-

2] at 17 ("The protocol is what we use in the jail, period. All the inmates that went to see outside

dentists. Whether the family prepaid for it or the jail paid for it, this is a standard protocol we use.").[4]

This protocol also provided that, "if Ibuprofen or Tylenol is inadequate for pain, to notify the doctor

for further orders." Defendants' SOF ¶ 11; *see also* Deffendall's SOF ¶ 19 (same). More powerful

narcotics *cannot* be administered to inmates without Dr. Silverman's approval, *see* Joint SOF ¶ 13, and

nurses cannot deviate from Dr. Silverman's protocols, *see id.* ¶ 15.

On October 9, 2020, Deffendall was seen by an outside dentist, Dr. Alfons Bucaj. *See* Joint

SOF ¶ 16. After evaluating Deffendall, Dr. Bucaj recommended "a tooth extraction with [a] bone

graft." *Id.* ¶ 17. Before the surgery, Deffendall's sister, Jill, called Defendant Nusser, who assured her

---

[3] Tylenol is a brand name for the drug "acetaminophen." *See Jennings v. Woodget*, 2022 WL 2680298, at
*8 n.9 (S.D. Ala. June 10, 2022).

[4] Deffendall never responded to the Defendants' SOF. *See generally* Docket. Our Local Rules require
litigants to respond to the opposing party's SOF to the extent that factual issues are disputed. *See* S.D.
FLA. L.R. 56.1(b)(2)(B)–(C) ("An opponent's Statement of Material Facts shall use, as the very first
word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed.' If an opponent's
Statement of Material Facts disputes a fact in the movant's Statement of Material Facts, then the
evidentiary citations supporting the opponent's position must be limited to evidence specific to that
particular dispute."). Because Deffendall didn't file a Response SOF, we'll deem every fact the
Defendants asserted in their SOF "admitted" *unless* that fact is contradicted by the Joint SOF,
Deffendall's SOF, or the other evidence in the record. *See Ibezim v. GEO Grp., Inc.*, 2018 WL 8222121,
at *7 (S.D. Fla. July 6, 2018) (Marra, J.) ("Failure of a respondent to file a statement of disputed facts,
in the format as required [by the Local Rules] causes all material facts set forth in the movant's
statement to be deemed admitted unless controverted by the opposing party's statement." (cleaned
up)); *see also* S.D. FLA. L.R. 56.1(c) (same).

that the Jail "would follow the dentist/doctor's orders[.]" *Id.* ¶¶ 11, 20. Nusser "never spoke to Dr. Bucaj's office," *id.* ¶ 22, and he didn't know what Dr. Bucaj's "orders were going to be" when he spoke to Jill, *see* Defendants' SOF ¶ 15. Defendant Jones was ultimately responsible for coordinating Deffendall's post-operative care with Dr. Bucaj's office. *See* Joint SOF ¶¶ 18, 24, 26–28, 34 (explaining that Nurse Jones contacted Dr. Bucaj's office "to set up an appointment for Mr. Deffendall," to discuss Deffendall's request for a narcotic painkiller, and to "have a prescription of antibiotic sent over"). Nusser, in fact, was out of the office for most of the time that Deffendall was recovering from the oral surgery. *See id.* ¶ 21 ("[Lt. Nusser] was out of the office with illness and pre-approved vacation. He went out a few days before Christmas 2020. He returned in early January 2021.").

The day before Deffendall's surgery, Dr. Bucaj "prescribed Vicodine [sic] for pain," but Defendant Jones refused to provide that narcotic to Deffendall because it was contrary to the Jail's "dental pain protocol." *Id.* ¶¶ 23–24. Deffendall's surgery was successfully performed on December 16, 2020. *See id.* ¶ 25. After the surgery, Dr. Bucaj ordered that Deffendall be given salt water and yogurt, but Defendant Jones refused because "the jail does not provide yogurt." *Id.* ¶ 26. Deffendall was administered 800 milligrams of ibuprofen "twice a day for 5 days" in accordance with the Jail's "dental pain protocol." *Id.* ¶ 29. Dr. Bucaj also prescribed some amoxicillin, an antibiotic. *See id.* ¶ 33.[5] But Dr. Silverman didn't authorize Deffendall to receive a narcotic. *See id.* ¶ 28.

Nevertheless, Deffendall was in "extreme pain" from the surgery. Deffendall's SOF ¶¶ 13–14; *see also* Defendants' Response SOF ¶¶ 13–14 ("Undisputed."). Deffendall complained about the pain to several different jail officials on a daily basis. *See* Deffendall's SOF ¶ 15; *see also* Defendants' Response SOF ¶ 15 ("Undisputed[, but] [t]here is no evidence in the record as to how long [Deffendall] complained of pain 'every day[.]'"). Indeed, both Deffendall and his sister contacted Dr.

---

[5] There was a delay in administering the amoxicillin because "Dr. Bucaj did not send an order for [the] antibiotic" until December 18, 2020. Joint SOF ¶¶ 31, 33.

Bucaj's office (and the Jail) to complain that Deffendall wasn't receiving a narcotic, but Defendant Jones explained that "there was a miscommunication and that the jail health authority does not agree to [administer a] narcotic for dental pain." Joint SOF ¶ 31. Deffendall also complained that he wasn't receiving yogurt, as Dr. Bucaj instructed. *See id.* ¶ 41 ("Deffendall submits a medical request stating: 'Salt and yogurt. 'Post-op instructions' requiring rinsing with salt water for 2 weeks and yogurt the entire time on antibiotics[.]'"). Because the Jail doesn't provide yogurt, Deffendall "was ordered a probiotic in its place"—but only after Nurse Jones spoke to Dr. Bucaj's office and Dr. Silverman. *Id.* ¶ 40.

Still, Deffendall continued to complain about the dental pain, and he insisted that "the jail protocol is not working." *Id.* ¶ 38. On December 22, 2020, Deffendall was seen by Nurse Pooler, who observed that Deffendall probably had "dry socket," a condition that "will be painful." *Id.* ¶ 39. Nurse Pooler did not observe any "signs of infection," but Nurse Pooler did authorize Tylenol and ice packs. *Ibid.*; *see also* Deffendall's SOF ¶ 18 ("Deffendall did not receive acetaminophen (Tylenol) until one week [after his surgery] on December 23, 2020."). The next day, Deffendall "stated that he was feeling ok, just in pain." Joint SOF ¶ 44.  The record is ambiguous as to whether Nurse Jones or Nurse Goines "notif[ied] a medical doctor seeking further orders for Deffendall's extreme pain." Deffendall's SOF ¶¶ 20–21.

Deffendall eventually had a follow-up visit with Dr. Bucaj on January 6, 2021. *See* Joint SOF ¶ 45. By that point, Deffendall was "not taking antibiotic and/or pain medication" anymore, and he reported "a pain level of 0 out of 10." *Id.* ¶¶ 45–46. Dr. Bucaj thus concluded that Deffendall was healing and "doing fine." *Id.* ¶ 47.

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms,

6

this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion [ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with 'specific facts showing there is a genuine issue for trial.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."); *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note to 2010 amendment)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

### I.    The Failure to Protect Defendants

Deffendall's first count alleges that Defendants Stinson, Bryant, Hamilton, and Brown failed to protect him from a "violent inmate," Eddie Gibson. *See* Amended Complaint at 8. Deffendall claims that the Failure to Protect Defendants knew (or should have known) that Gibson posed a threat to him because Gibson was "yelling and screaming obscenities" while the officers were moving him and because Gibson verbally threatened Deffendall several times in the officers' presence. *See ibid.* The Defendants, by their own admission, "have not moved for summary judgment as to the failure to protect claim on the merits." Defendants' SOF ¶ 1. Instead, they argue that Deffendall brought his failure-to-protect claims *outside* the applicable four-year statute of limitations because "record evidence now demonstrates that the Plaintiff did not deliver his Complaint to jail/prison authorities until April 22, 2021 or later[.]" MSJ at 2. The Defendants also reraise an argument we've already rejected: that Deffendall failed to exhaust his administrative remedies at the Jail because "there were no grievances [Deffendall] submitted related to the April 20, 2017 incident." *Id.* at 20. This one's a close call, but we find that Deffendall's failure-to-protect claim is (just barely) timely. At the same time, we conclude

that Deputy Hamilton must be dismissed from this case because he's the only one of the Failure to Protect Defendants who hasn't waived his exhaustion defense.

### A.   The Failure-to-Protect Claim is Timely

A constitutional claim under § 1983 is "subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing *Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985)). In Florida, the relevant statute of limitations is four years. *See City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1103 (11th Cir. 2002) ("Plaintiffs must bring a section 1983 claim arising in Florida within four years of the alleged unlawful [act]."). It's undisputed that Deffendall was attacked by Eddie Gibson on April 20, 2017, so he would have had until April 20, 2021, to file any § 1983 claim arising from that assault. *See* Joint SOF ¶ 4.

On September 28, 2022, three of the seven Defendants—Stinson, Brown, and Bryant[6]—filed a motion to dismiss Deffendall's (operative) Amended Complaint. *See* Motion to Dismiss [ECF No. 36]. In that motion, those three Defendants argued that Deffendall had "instituted this civil rights lawsuit against the Defendants on May 10, 2021, with the filing of [his original] civil rights complaint," which was more than four years after the April 20, 2017, attack. *Id.* at 1. We quickly dispatched this argument by noting that, "[u]nder the 'prison mailbox rule,' a prisoner's 'pleading is considered filed on the date the prisoner delivers such to prison officials for filing.'" Order Denying Motion to Dismiss [ECF No. 37] at 3 (quoting *Day v. Hall*, 528 F.3d 1315, 1318 (11th Cir. 2008)). We also found that Deffendall "signed and dated his Complaint on April 15, 2021." *Id.* at 4. And, after applying binding Eleventh Circuit precedent, we presumed that "the Complaint 'was delivered to prison authorities on the day he signed it.'" *Id.* at 3 (quoting *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)); *see also* Complaint [ECF No. 1] at 16 (signed and dated on April 15, 2021).

---

[6] Put a pin in this fact because it will become relevant when we talk about Deputy Hamilton's exhaustion defense below.

Now, however, the Defendants say they have proof that the Complaint *wasn't* delivered to prison officials on April 15, 2021, and that the date reflected on the Complaint was intentionally backdated. The parties agree that "Deffendall was released to the custody of the Department of Corrections and transported from the Indian River County Jail to prison on April 22, 2021." Joint SOF ¶ 2. As a result, if Deffendall (in fact) gave his Complaint to Jail officials on April 15, 2021, he would have done so at the Indian River County Jail. But his Complaint lists his address as "14000 NW 41st Street, Doral, FL 33178" and his "Prison Identification #" as "K60999." Complaint at 16. Both of these pieces of information (the Defendants say) indicate that he was already gone from the Indian River County Jail—and, indeed, already at his assigned prison facility—when he submitted his Complaint. As the Defendants rightly point out, the address on the Complaint ("14000 NW 41st Street, Doral, FL 33178") is the address for the South Florida Reception Center—a prison operated by the Florida Department of Corrections—and the identification number ("K60999") is the prisoner number Deffendall was assigned when he arrived at the South Florida Reception Center. *See* MSJ at 4 ("Plaintiff Deffendall was initially received by the Department of Corrections on April 22, 2021, and was assigned a DOC prisoner number at that time. . . . [T]he Complaint was mailed out by State of Florida prison facilities on behalf of Mark Deffendall from 14000 NW 41st Street, Doral, FL, 33178, the address of South Florida Reception Center[.]").[7] Based on this inconsistency between the

---

[7] Deffendall doesn't dispute any of this evidence. *See* Response at 9–14. And that's sufficient for us to deem those facts "admitted" for purposes of this MSJ. *See Lucas v. City of Delray Beach*, 2023 WL 6037456, at *10 n.12 (S.D. Fla. Sept. 15, 2023) (Altman, J.) ("Lucas fails here to adduce any evidence for her disputation. We thus accept the City's asserted fact as true for purposes of summary judgment."); *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute."). In an abundance of caution, however, we'll take judicial notice of the Florida Department of Corrections website, which confirms that: (1) the South Florida Reception Center's address is 14000 NW 41st Street, Doral, FL 33178; and (2) Deffendall's prisoner number is "K60999." *See* Inmate Population Information Detail, FLORIDA DEPARTMENT OF CORRECTIONS, https://fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=K60999&TypeSearch=AI (last visited Nov. 22, 2023). We may take judicial notice of this information because it "can be accurately and

Complaint's date (April 15, 2021) and Deffendall's identifying information, the Defendants insist that "Plaintiff submitted the Complaint to the State of Florida prison officials for filing on April 22, 2021 or later, which was after the expiration of the statute of limitations. Plaintiff [then] intentionally backdated his Complaint so as to avoid a statute of limitations defense." MSJ at 4.

Against all this, Deffendall advances two arguments. *First*, he says that his first § 1983 complaint was filed on *April 6, 2021*, albeit in Case No. 21-cv-14160-RKA, and that we should find *either* that "the Court equitably tolled the statute of limitations through and including May 7, 2021," *or* that the Complaint in *this case* "relates back to the Original [April 6, 2021] Complaint[.]" Response at 10–11. *Second*, he claims that "the statute of limitations was equitably tolled pending exhaustion of Deffendall's administrative remedies." *Id.* at 13. We needn't reach Deffendall's second argument because we find that this case relates back to the complaint Deffendall filed on April 6, 2021, in Case No. 21-cv-14160-RKA.

On April 6, 2021, Deffendall filed a § 1983 complaint in that other case. *See* Complaint, *Deffendall v. Loar*, No. 21-cv-14160-RKA (S.D. Fla. Apr. 7, 2021), ECF No. 1 (the "April 6, 2021, Complaint"). In that April 6, 2021, Complaint, Deffendall alleged, among other things, that "[four] Indian River County Sheriff employees . . . encouraged inmate Edward Gibson to do harm to me and they all stood by and watched[.]" *Id.* at 6. We ultimately dismissed the April 6, 2021, Complaint *without prejudice* because "Jill Holder [Deffendall's sister] filed this Complaint on behalf of [Deffendall], pursuant to a (supposed) power of attorney. But Holder isn't an attorney . . . . [S]he thus cannot represent Deffendall in court—even if he wanted her to—because a power of attorney does not license a non-attorney to represent another party in federal court." Order Dismissing April 6, 2021,

---

readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2); *see also, e.g., Shofur LLC v. Fitzpatrick*, 2022 WL 17078017, at *1 (N.D. Ga. Mar. 3, 2022) (Jones, J.) (taking judicial notice of a prison's "mailing address information"); *Brinis Fernandez v. Florida*, 2022 WL 1619638, at *2 n.2 (S.D. Fla. May 23, 2022) (Scola, J.) (taking judicial notice of "the Florida Department of Corrections' 'Inmate Population information Search'").

Complaint, *Deffendall v. Loar*, No. 21-cv-14160-RKA (S.D. Fla. Apr. 8, 2021), ECF No. 4 at 1 (cleaned up). Importantly, though, we also told Deffendall that, "[i]f [he] wishes to represent himself . . . *he may file a motion to reopen this case (with an accompanying amended complaint)* by May 7, 2021." *Id.* at 2 (emphasis added). For whatever reason, Deffendall *didn't* file a motion to reopen in Case No. 21-cv-14160. Instead, as we've seen, he filed a *new* complaint and initiated a *new* case—which is where we are today. *See generally* Complaint [ECF No. 1].

An "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" FED. R. CIV. P. 15(c)(1)(B). This relation-back rule plainly applies here. The April 6, 2021, Complaint named as defendants the same four correctional officers who are our Failure to Protect Defendants in this case: Sergeant Stinson, Deputy Brown, Deputy Hamilton, and Deputy Bryant. *See* April 6, 2021, Complaint at 2. And (as with our Amended Complaint) the April 6, 2021, Complaint alleged that these four Defendants failed to protect Deffendall from Gibson. *See id.* at 6 ("There were 4 Indian River County Sherriff employees that encouraged inmate Eddie Gibson to do harm to me as they all stood by and watched[.]"). There's thus no doubt that the April 6, 2021, Complaint, our original Complaint in this case, and the Amended Complaint in this case rely on the same "common core of operative facts" (*viz.*, that Defendants Stinson, Brown, Hamilton, and Bryant failed to protect Deffendall from Eddie Gibson on April 20, 2017). We thus agree that, under Rule 15(c), "relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 664 (2005); *see also Dean v. United States*, 278 F.3d 1218, 1222 (11th Cir. 2002) ("The key consideration [for relation back] is that the amended claim arises from the same conduct and occurrences upon which the original claim was based."); *Presnell v. Paulding Cnty., Ga.*, 454 F. App'x 763, 767 (11th Cir. 2011) ("With respect to Plaintiff's attempt to amend to state a § 1983 claim based upon a Fourth Amendment violation against GBI, the claim would arise out of the same transaction

as set forth in the original complaint. Thus, that claim against GBI would relate back so as to avoid any statute of limitations problem.").

Resisting this conclusion, the Defendants maintain that, under the Eleventh Circuit's recent decision in *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332 (11th Cir. 2023), our "directive to Plaintiff when [we] dismissed the complaint in the first lawsuit . . . [to] file a motion to reopen the case with an accompanying amended complaint by May 7, 2021," didn't toll the statute of limitations. Reply at 3. As the Defendants see it, by filing a *new* complaint—rather than a motion to reopen his original case—Deffendall waived his right to have this case relate back to the April 6, 2021, Complaint because, "when a timely complaint is dismissed without prejudice, a later action that is filed outside the period of limitations is untimely, as it would be if the previous action had never existed." *Id.* at 4 (citing *Wright*, 69 F.4th at 1337).

The Defendants' reliance on *Wright* and other, related Eleventh Circuit decisions is misplaced. We agree that, as "a general rule[,] . . . the filing of a lawsuit which is later dismissed without prejudice does not automatically toll the statute of limitations." *Justice v. United States*, 6 F.3d 1474, 1478–79 (11th Cir. 1993). But that's not quite what happened here. Although we dismissed Deffendall's April 6, 2021, Complaint without prejudice, we *also* offered him a chance to reopen the case and to file a new amended complaint by May 7, 2021. *See* Order Dismissing Complaint, *Deffendall v. Loar*, No. 21-cv-14160-RKA (S.D. Fla. Apr. 8, 2021), ECF No. 4 at 2. If Deffendall had timely filed his current complaint in Case No. 21-cv-14160-RKA—rather than in this new case—his complaint would have unquestionably related back to the April 6, 2021, Complaint and, therefore, would have been timely. *See Gordon v. Green*, 602 F.2d 743, 746–47 (5th Cir. 1979) ("[I]n ordering the suits dismissed we do so with leave to amend. . . . We hold that under FED. R. CIV. P. 15(c), the filing of a proper, decent, acceptable amendment will relate back to the original finding, thus eliminating any question

concerning the statute of limitations.");[8] *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1025 (7th Cir. 2013) (explaining that, when a plaintiff is "entitled to leave to amend," relation back to the original complaint "is exactly what Rule 15(c) intends"). That's very different from what happened in the other cases the Defendants cite—where the original complaints had been dismissed *without* leave to amend— so we don't think those cases are controlling here. *See, e.g.*, *Wright*, 69 F.4th at 1335–36 (finding no tolling where the original complaint was "dismissed . . . for lack of personal jurisdiction" after the defendants filed a Rule 12(b) motion); *Justice*, 6 F.3d at 1480 (finding that the plaintiff was "not entitled to equitable relief" because the original case was dismissed after the plaintiff "fail[ed] to comply with the district court's orders"); *Dade Cnty. v. Rohr Indus., Inc.*, 826 F.2d 983, 989 (11th Cir. 1987) (holding that the "district court erred in applying the relation back doctrine" because "the subsequent *voluntary dismissal* of the federal action has the effect of placing the parties in a position as if the suit had never been filed" (emphasis added)).

Of course, Deffendall *didn't* file his complaint in Case No. 21-cv-14160-RKA. He, instead, opened a new case by filing a new complaint that didn't list his previous case number. That was undoubtedly a mistake—one we mainly attribute to his lack of expertise in the nuances of the case-filing system. So, the question really is: How much should this relatively innocuous (and frankly understandable) technical error cost Deffendall? If we adopt the Defendants' position, we'd be stripping him of the right to bring one of his two claims. That, to our mind, would be an overly harsh and disproportionate punishment for a *pro se* inmate's harmless procedural mistake. *Cf. Justice*, 6 F.3d at 1482 n.15 ("[B]ecause such an order has the effect of precluding plaintiff from refiling his claim due to the running of the statute of limitations[,] the dismissal is tantamount to a dismissal with prejudice. Dismissal with prejudice is a drastic remedy to be used only in those situations where a lesser sanction

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

would not better serve the interests of justice. It is a sanction of last resort, proper only where there is a clear record of delay or willful contempt."); *Shuler v. Garrison*, 718 F. App'x 825, 827–28 (11th Cir. 2017) ("We may thus show some leniency when an appellant's exhibited intent is contrary to a technical mistake that would otherwise impede his appeal. This is especially so for *pro se* litigants." (citing *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1374–75 (11th Cir. 1983))). *Pro se* litigants are, of course, expected to obey "the relevant law and rules of court," *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), but we shouldn't use those rules "to set traps and pitfalls by way of technicalities for unwary litigants" when it's clear that a *pro se* party was *trying* to comply, *Finch v. City of Vernon*, 845 F.2d 256, 259 (11th Cir. 1988) (quoting *Des Isles v. Evans*, 225 F.2d 235, 236 (5th Cir. 1955)).

Because (since April 6, 2021) Deffendall has continuously asserted the same failure-to-protect claim in federal court against Defendants Stinson, Brown, Hamilton, and Bryant, we find that the Complaint and Amended Complaint in our case relate back to his April 6, 2021, Complaint—which means that his failure-to-protect claim was filed within the applicable four-year statute of limitations.[9]

---

[9] The Defendants also ask us to dismiss *the entire* case (not just the failure-to-protect claim) as a sanction because "Plaintiff clearly backdated his Complaint seemingly in an effort to mislead the Court that the Complaint was timely filed within the statute of limitations." MSJ at 5. We *are concerned* by this discrepancy. There is, after all, no way for Deffendall to have handed his complaint to prison officials at the South Florida Reception Center on April 15, 2021. Still, dismissing an entire case (or even an entire claim) is an extraordinary sanction that should be deployed *only* in the most egregious circumstances. *See Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337–38 (11th Cir. 2005) ("[D]ismissal . . . is an extreme sanction that may be properly imposed only when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." (cleaned up)). Deffendall suggests that there may be less sinister reasons for this discrepancy than a calculated decision "to lie to the Court in a public filing." Response at 15–16. Even if Deffendall *did* lie, though, that lie was kind of immaterial— *i.e.*, it's a lie he didn't need to tell—because (as we've said) his Complaint and Amended Complaint relate back to his April 6, 2021, Complaint. That said, if Deffendall did falsify a court record, he should be punished in *some* way. The real question is  how. So, this is what we'll do: When the trial is over, the Defendants can refile their request for sanctions. In that motion, the Defendants can ask us again to sanction Deffendall for falsifying his complaint. If that motion comes, we'll hold a hearing on the issue, and we'll decide whether Deffendall lied and, if he did, what the appropriate sanction might be.

### B. Deputy Hamilton is Entitled to Advance an Exhaustion Defense

As we've said, the Failure to Protect Defendants separately argue that Deffendall failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). *See* MSJ at 15–16; *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."). We've already found that the Failure to Protect Defendants waived this defense under FED. R. CIV. P. 12(g)(2) because they didn't raise it in their original Motion to Dismiss. *See* Order Denying Motion for Judgment on the Pleadings [ECF No. 76] at 3–4 ("Since the Defendants had the opportunity to raise a PLRA exhaustion defense in their first Rule 12 motion (but didn't), we find . . . that their 'untimely assertion of the exhaustion defense [is] procedurally barred under Rule 12(g)(2).'" (quoting *Brooks v. Warden*, 706 F. App'x 965, 970 (11th Cir. 2017))). The Defendants now ask us to reconsider our decision for two reasons: (1) an exhaustion defense (they say) "was not available to the Defendants and could not have been raised in good faith [in the Motion to Dismiss] without the benefit of developing the record and conducting discovery on the issue," MSJ at 18; and (2) Defendant Hamilton "could not have waived his right to the exhaustion defense under Rule 12(g)" because "he had not been served" when the Motion to Dismiss was filed, *id.* at 17.

We reject the Defendants' first argument out of hand. As we've explained, the Eleventh Circuit's decision in *Brooks v. Warden* is on all-fours with ours. *See* Order Denying Motion for Judgment on the Pleadings [ECF No. 76] at 5 ("*Brooks*'s holding makes sense. The language of Rule 12(g)(2) unambiguously forbids a party from filing multiple Rule 12 motions."). And we see no reason to reconsider our decision merely because the Defendants think we got it wrong. *See Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. A motion for reconsideration should not be used as a vehicle to present authorities available at the time

of the first decision or to reiterate arguments previously made. It's an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought out—rightly or wrongly[.]" (cleaned up)).[10]

On the other hand, we agree with the Defendants' second argument. Although Defendants Stinson, Brown, and Bryant filed a Rule 12(b)(6) motion to dismiss, Defendant Hamilton *did not*. *See* Motion to Dismiss [ECF No. 36] at 1 ("*Defendants Stinson, Brown, and Bryant*, in their individual capacity . . . file their Motion to Dismiss Plaintiff's Amended Complaint[.]" (emphasis added)). That's because Defendant Hamilton wasn't served until October 25, 2022, which was nearly a month *after* the Motion to Dismiss was filed (on September 28, 2022). *See* Returned Summons on Defendant Hamilton [ECF No. 49]. The long and the short of it is that—unlike the other three Failure to Protect Defendants— Defendant Hamilton *couldn't* have waived his exhaustion defense under Rule 12(g)(2) because he never joined the *earlier* Rule 12(b) motion. *Cf. Sherman v. Quest*, 2020 WL 6791100, at *8 (S.D. Fla. Nov. 19, 2020) (Altman, J.) ("But, again, 'a defendant must raise the exhaustion defense in his first Rule 12 motion, otherwise the defense is forfeited and cannot be raised in a later motion under Rule 12.'" (quoting *Brooks*, 706 F. App'x at 968)). We'll therefore consider whether Deffendall exhausted his administrative remedies against Defendant Hamilton.

The PLRA requires that, before he files a § 1983 suit in federal court, a prisoner must exhaust his claims through the prison facility's administrative-grievance system. *See Jones v. Bock*, 549 U.S. 199,

---

[10] We also reject the Defendants' position that they *couldn't* have raised an exhaustion defense without "conducting discovery[.]" MSJ at 18. Exhaustion defenses are frequently (and successfully) raised in pre-answer Rule 12(b)(6) motions to dismiss. *See, e.g., Augusme v. Carlton*, 2022 WL 10042943, at *3–5 (S.D. Fla. Oct. 17, 2022) (Altman, J.) (granting Rule 12(b)(6) motion after the defendant "attached to his Motion to Dismiss all of Augusme's grievances," which showed that he "never exhausted his remedies against Warden Carlton specifically"); *Weeks v. Braddy*, 2023 WL 2610290, at *4 (S.D. Fla. Mar. 23, 2023) (Altman, J.) (dismissing case pre-answer after the defendants demonstrated that the plaintiff's grievances "were untimely under [the jail's] regulations"). And that makes sense in the context of the PLRA because the Defendants (officials at the Jail where the administrative remedies would have been exhausted) would be in the best position to say whether the Plaintiff had exhausted his remedies.

211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002))). If a prison system "provides a grievance procedure for its prisoners," then the "inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure[.]" *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)). The exhaustion requirement is absolute, and prisoners must "exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The only exception to this rule kicks in when administrative remedies are simply "unavailable" to the prisoner. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1324 (11th Cir. 2007) ("Because an administrative remedy that is unavailable until after the lawsuit is filed is not an available remedy within the meaning of § 1997e(a)'s exhaustion requirement, the appeal remedy was not one that Goebert was required to exhaust.").[11]

According to Deputy Hamilton, a careful review of Deffendall's grievance history from the Indian River County Jail reveals that "the Plaintiff did not file any grievances related to the April 20, 2017 incident before filing the lawsuit." MSJ at 21; *see also* Deffendall's Grievance History [ECF No. 67-1] at 11–279. Deffendall responds that he *did* submit grievances, *see* Deffendall Grievances [ECF Nos. 70-1, 70-2, 70-3], and that, even if he didn't, we should ignore the omission because the Indian

---

[11] The Supreme Court has held that administrative remedies should be considered "unavailable" in at least three circumstances. *One*, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643 (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). *Two*, an administrative procedure is unavailable when the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use." *Ibid*. *Three*, the procedures are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

River County Jail's grievance procedure "does not apply to a failure to protect claim based on an attack by another inmate." Response to Motion for Judgment on the Pleading ("MJP Response") [ECF No. 70] at 4.

The Eleventh Circuit uses a two-step test to determine whether a prisoner has successfully exhausted his administrative remedies. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). If the plaintiff's version of the facts indicates that he failed to exhaust his administrative remedies, then "the complaint [must be] dismissed[.]" *Ibid.* Second, if the prisoner passes the first step, the burden shifts to the defendant to prove, with competent evidence, "that the plaintiff has failed to exhaust his administrative remedies[.]" *Ibid.* At that point, we must "make specific findings in order to resolve the disputed factual issues related to exhaustion" and, based on those factual findings, determine whether the prisoner has exhausted all available remedies. *Id.* at 1082–83.

Since Deffendall's "version of the facts" shows that he exhausted his administrative remedies, we'll proceed directly to *Turner*'s second step and "resolve the disputed factual issues related to exhaustion." *Id.* at 1082. Deffendall provided copies of three grievances—dated April 22, 2017, April 28, 2017, and June 22, 2017, respectively—in which he complained that certain correctional officers failed to protect him from Eddie Gibson. *See generally* Deffendall Grievances [ECF Nos. 70-1, 70-2, 70-3]. But these grievances don't have notations indicating that they were ever received or accepted by a Jail official, *see ibid.*, which is in marked contrast to the hundreds of other *recorded* jail grievances Deffendall has submitted, *see, e.g.*, Deffendall's Grievance History [ECF No. 67-1] at 11–279. Deputy Hamilton contends that the three failure-to-protect grievances at issue here *either* were never submitted *or else* are fraudulent because, "[h]ad Deffendall actually submitted the three 'grievances' to the jail officials, there would have been at least a signature of the receiving officer on the date it was received."

MSJ at 23; *see also* Indian River County Grievance Procedure [ECF No. 67-1] at 8 ("The assigned housing deputy shall acknowledge receipt of the inmate grievance by noting the date, time and their name as the person receiving the grievance."). Deffendall doesn't explain why his failure-to-protect grievances are noticeably different from *every other* grievance he's successfully submitted over his six-plus years at the Jail. *See generally* Response; MJP Response.

Deputy Hamilton has thus provided "competent evidence" that Deffendall didn't exhaust his administrative remedies. *Turner*, 541 F.3d at 1028. Even when viewing the facts in the light most favorable to Deffendall, the evidence is overwhelming that the Jail never received Deffendall's failure-to-protect grievances. *See* Affidavit of James Hare [ECF No. 67-1] ¶ 14 ("Based on my review of Deffendall's jail records, Deffendall did not submit a grievance regarding any issue during his incarceration at the Indian [R]iver County Jail related to an incident involving himself and Edward Gibson, which occurred on April 20, 2017."); *see also Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Mr. Whatley's exhibits. . . . Mr. Whatley's claim was belied by the lack of documentation anywhere in the grievance record system relating to the alleged January 18 filing."). And (it goes without saying) a grievance that's never received—or which is improperly filed—doesn't satisfy the PLRA's exhaustion requirement. *See Johnson*, 418 F.3d at 1157–58 ("[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002))).

Deffendall, by contrast, fails to present *any* evidence (or even argument) to explain the absence of these three failure-to-protect grievances from the Jail's records. *See generally* Response; MJP Response. We note, in this respect, that Deffendall is no novice when it comes to the Jail's grievance system. He, in fact, has successfully filed *over 200* different grievances through that system. *See* Deffendall's Grievance History [ECF No. 67-1] at 11–279. And that proficiency is highly probative

evidence that the three failure-to-protect grievances at issue now were *either* never filed *or else* were created much later. *See Whatley*, 898 F.3d at 1083 ("The district court also appropriately considered Mr. Whatley's history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances."); *Lawson v. McGee*, 2021 WL 2515683, at *6 (S.D. Fla. June 18, 2021) (Cannon, J.) ("The inconsistencies between the 'copies' submitted by Plaintiff and what filed grievances actually look like supports a factual finding in favor of Defendants that the 'copies' were in fact never filed."); *Stewart v. Coates*, 2023 WL 5352930, at *6 (N.D. Fla. July 3, 2023) (Bolitho, Mag. J.) ("Taken together, the lack of evidence indicating that SRCI/FDOC received a grievance regarding the September 14, 2020 incident and evidence that other grievances filed by Plaintiff were able to proceed through the grievance process, refute Plaintiff's contention that his attempts to exhaust administrative remedies were thwarted by prison staff."), *report and recommendation adopted*, 2023 WL 5352611 (N.D. Fla. Aug. 21, 2023) (Rodgers, J.). Without any evidence that Deffendall properly submitted these three grievances through the Jail's grievance system, we conclude that Deffendall never exhausted his administrative remedies with respect to Defendant Hamilton.

We also reject Deffendall's claim that the Jail's grievance system was "unavailable" to him. The evidence is (again) undisputed that inmates can use the Jail's grievance procedures to complain about "any incident, policy, and/or condition within the Indian River County Jail"—unless the problem concerns "county, state[, or] federal court decisions"; "county, state[, or] federal laws and regulations"; "matters beyond the control of the Indian River County Sheriff's Office"; "matters concerning inmates other than the grievant"; or "disciplinary sanctions." Affidavit of James Hare [ECF No. 67-1] ¶ 3; *see also* Indian River County Grievance Procedure [ECF No. 67-1] at 8–9 (same). Deffendall argues that the Jail's grievance procedure doesn't apply to failure-to-protect claims because "[a]n attack by another inmate necessarily will involve 'inmates other than the grievant' . . . and is not a 'policy, procedure, service or condition.'" MJP Response at 4. But that's frivolous. The plain language

of the Jail's grievance procedure contemplates that a grievance can be filed about any "condition of incarceration with the jail," which would naturally include the Jail's failure to protect an inmate from another inmate. Indian River County Grievance Procedure [ECF No. 67-1] at 7. After all, an inmate's assault at the hands of another inmate undoubtedly constitutes a "condition" within the Jail. *See, e.g.*, *Condition*, CAMBRIDGE ONLINE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/condition (last visited Nov. 24, 2023) ("[T]he physical situation that someone or something is in and affected by[.]").[12] The grievance procedure's prohibition against filing grievances "concerning inmates other than the grievant" obviously applies to situations in which an inmate files a grievance *on behalf of* another inmate. We therefore conclude that the Jail's grievance procedures were available for Deffendall to use in the circumstances of our case. *See Ross*, 578 U.S. at 642 (defining an "available" grievance procedure as one that's "capable of use to obtain some relief for the action complained of").[13]

---

[12] This interpretation is confirmed by Deffendall's own grievance history. He, after all, has successfully filed multiple grievances about problems he's had with *other* inmates. *See, e.g.*, Deffendall's Grievance History [ECF No. 67-1] at 200 (expressing concern that inmate Ward Kenyon made "verbal threats" against him); *id.* at 226 (complaining about inmate Demonte Marshal being "disruptive" and a "general nuisance").

[13]      Deffendall has requested "an evidentiary hearing on the exhaustion of his administrative remedies" *if* this issue becomes "ripe for the Court's consideration[.]" MJP Response at 3 n.2; *see also* Response at 5 n.2 (same). And the Eleventh Circuit has held that, if a party asks for an evidentiary hearing, the court should usually hold one to resolve any disputed issues of fact on the exhaustion defense. *See Bryant v. Rich*, 530 F.3d 1368, 1377 n.16 (11th Cir. 2008) ("At least in the absence of a timely request for an evidentiary hearing and where the resulting order is to be a dismissal without prejudice, a district court may resolve material questions of fact on submitted papers for the PLRA's exhaustion of remedies requirement."); *accord McIlwain v. Burnside*, 830 F. App'x 606, 611 (11th Cir. 2020) ("*Bryant* instructs us that a district court may resolve disputed questions of fact on submitted papers only 'in the absence of a timely request for an evidentiary hearing.'"). In this case, however, we find that an evidentiary hearing would be unnecessary for two reasons. *One*, we're now at the summary-judgment phase of the case, so both parties have already had the chance to present whatever evidence they'd rely on at an evidentiary hearing. *See Bryant*, 530 F.3d at 1377 ("Also, because the district court treated Defendants' motions to dismiss like motions for summary judgment, Priester was given an opportunity to develop a record by obtaining affidavits and attaching them to his filings; and Priester did so."); *Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 536 (11th Cir. 2014) (affirming decision to dismiss complaint on exhaustion grounds without an evidentiary hearing "[b]ecause the parties had a sufficient opportunity to develop the factual record"). *Two*, in his request for an evidentiary hearing,

\*        \*        \*

To recap: Deffendall's failure-to-protect claim is timely because it relates back to the complaint he filed on April 6, 2021. At the same time, Deputy Hamilton—and only Deputy Hamilton—can rely on Deffendall's failure to exhaust his administrative remedies as an alternative, viable defense to the failure-to-protect allegations. We recognize the procedural oddity in treating Deputy Hamilton differently from the other three Failure to Protect Defendants just because he was served later, but (as we've explained) that's what the law requires. We therefore **DENY** summary judgment for Defendants Stinson, Bryant, and Brown, and **DISMISS** Defendant Hamilton from this action.[14]

## II.    The Medical Indifference Defendants

In his second count, Deffendall asserts a deliberate-indifference-to-medical-needs claim. As Deffendall explains, Dr. Bucaj "prescribed an after care [sic] treatment plan, with accompanying medications," that should have been implemented by the Jail's medical staff. Amended Complaint at

---

Deffendall didn't explain how the hearing would help us resolve the exhaustion issue. He, in particular, never reveals which additional pieces of evidence—in addition to the evidence the parties have already submitted here—he'd be relying on at that hearing. *See, e.g.*, *Buckman v. Winningham*, 2023 WL 4931513, at *8 (M.D. Fla. Aug. 2, 2023) (Howard, J.) ("Both parties filed written arguments regarding the exhaustion issue, and they have had ample opportunity to file affidavits and exhibits in support of their positions. Buckman fails to explain why these proceedings did not provide him a sufficient opportunity to present his evidence or offer any reason to suggest that he would have additional evidence bearing on exhaustion to present at a hearing."); *see also McIlwain*, 830 F. App'x at 611 (explaining that the district court erred because it "did not give McIllwain an opportunity to develop the record," even though McIllwain had made "an explicit request for the district court to gather a key document from the defendants and perform a specific evidentiary hearing"). In these circumstances, we don't see what purpose an evidentiary hearing would serve since the record has already been fully developed.

    If Deffendall thinks a hearing would be helpful to our resolution of this factual dispute, he may file a motion for reconsideration **within 28 days of this Order**. But any such motion for reconsideration must (1) explain which additional pieces of evidence he'd be relying on at that hearing and (2) tell us why he failed to identify this additional evidence in his Response.

[14] We're dismissing Deputy Hamilton, rather than granting summary judgment in his favor, because an exhaustion defense "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1375 (cleaned up). "[S]ummary judgment," after all, "is on the merits, whereas dismissal of an action on the ground for failure to exhaust administrative remedies is not on the merits." *Ibid.* (cleaned up).

10. Deffendall blames the Medical Indifference Defendants for failing to comply with these post-operative orders in three ways: (1) they deliberately withheld "a prescription narcotic pain reliever," Response at 20; (2) they waited over a week to give Deffendall acetaminophen *in addition* to ibuprofen, *see id.* at 18–19; and (3) they failed to offer Deffendall a probiotic "for aiding the Plaintiff's recovery," Amended Complaint at 10.[15] The Defendants counter that none of the Medical Indifference Defendants "were deliberately indifferent to Deffendall's serious medical needs following the tooth extraction," and that, even if they were, they're entitled to qualified immunity. MSJ at 8. We agree in part. As we'll explain, we'll grant Lieutenant Nusser's request for summary judgment but find that, as to Nurses Jones and Goines, there remain genuine disputes of material fact.

To establish that a defendant was deliberately indifferent to his medical needs, a pretrial detainee "must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between the indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). The Defendants don't dispute that Deffendall's tooth extraction (and oral surgery) constitutes a "serious medical need[.]" MSJ at 10 ("Here, the Defendants assume for purposes of this motion that Deffendall had a serious medical need following oral surgery on December 16, 2020."); *see also, e.g.*, *Wright v. Sprayberry*, 817 F. App'x 725, 730 (11th Cir. 2020) (explaining that gum disease, which "requires [tooth] extraction," constitutes a "serious medical need"). We'll therefore focus on the second and third elements of a deliberate-indifference claim.

---

[15] We reject any argument that the failure to give Deffendall some yogurt (or other probiotic) amounted to a constitutional violation. The parties agree that Dr. Bucaj only "prescribed" yogurt "to offset the effects of an antibiotic" that was killing normal flora in Deffendall's gut. Joint SOF ¶ 43. The yogurt (or probiotic) had "no impact on the patient's healing process" and wouldn't have had any effect on Deffendall's recovery or his pain. Defendants' SOF ¶ 17; *see also* Dr. Bucaj Deposition [ECF No. 77-3] at 28 ("[The probiotic] has nothing to do with recovery. Nothing."). Perhaps for this reason, Deffendall wisely doesn't address this specific allegation in his Response. *See generally* Response at 17–21. Our focus, then, will be on whether the Medical Indifference Defendants violated Deffendall's constitutional rights by refusing to give him a prescribed narcotic and by waiting a week before giving him acetaminophen.

To show deliberate indifference, a plaintiff must establish "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than . . . negligence." *Mann*, 588 F.3d at 1307 (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). To establish the first two prongs of deliberate indifference, "the defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099–1100 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The "more than negligence" standard, on the other hand, is "'the equivalent of recklessly disregarding' a substantial risk of serious harm to the inmate." *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 836). Finally, Deffendall must show that there is a "causal link" between the Defendants' "allegedly deliberately indifferent acts and omissions" and Deffendall's injury (*i.e.*, his post-surgery pain). *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995); *see also LaMarca v. Turner*, 995 F.2d 1526, 1538–39 (11th Cir. 1993) ("The wrong . . . is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries[.]").

We'll begin with the easier issue: Lieutenant Nusser was neither the cause of Deffendall's injury nor deliberately indifferent to his serious medical needs. Nusser "does not have a medical license nor medical training," "did not have any involvement in the actual medical care to inmates," and "was not involved in how the postoperative instructions were followed." MSJ at 11; *see also* Joint SOF ¶¶ 10, 22 (same). In fact, it's undisputed that Dr. Silverman, not Defendant Nusser, was the "jail health authority" and the ultimate decision-maker for Deffendall's medical care. Joint SOF ¶ 12; *see also* Nusser Deposition [ECF No. 77-4] at 17 ("Q: So would it be fair to say that you have never overseen postoperative care for inmates? . . . A: I would never have involvement in the actual care itself."). Lieutenant Nusser was also absent from the Jail during most of Deffendall's post-operative recovery— either because he was sick or because he was on a pre-approved vacation. *See* Joint SOF ¶ 21 ("Shortly

after Lt. Nusser spoke to Deffendall's sister, he was out of the office with illness and pre-approved vacation. He went out a few days before Christmas 2020. He returned in early January 2021."). Based on these *undisputed* facts, we conclude that Defendant Nusser didn't (and couldn't) have had any involvement in the medical care Deffendall was receiving at the Jail.

Trying to parry, Deffendall musters two arguments—both unavailing. *One*, he says that Defendant Nusser incorrectly assured his sister (Jill) that the Jail's officials would "follow the dentist/doctor's orders[.]" Joint SOF ¶ 20. *Two*, he claims that Nusser supervised Nurses Jones and Goines and was responsible for disciplining them. *See id.* ¶ 11; Deffendall's SOF ¶ 22. But, even if true, neither fact is sufficient to establish Nusser's constitutional liability. It's undisputed that Nusser had no control or say in the medical treatment Deffendall received, so it wasn't unreasonable (and certainly not *grossly negligent*) for him to rely on Dr. Silverman and the nursing staff to treat Deffendall in accordance with their professional medical judgment. *See Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1159 (11th Cir. 2010) (holding that correctional officers weren't deliberately indifferent to an inmate's medical needs because they "had been told by a medical professional that Townsend was not presenting an emergency"). Nor (for similar reasons) was it grossly negligent for Nusser to assume (in his discussions with Jill) that the Jail's medical staff *would* follow Dr. Bucaj's orders. *Cf. Clark v. Sheffield*, 807 F. App'x 910, 917 (11th Cir. 2020) ("But neither Sheffield nor Barrentine are trained medical professionals, nor did they have any role in Clark's examinations or course of treatment. . . . It was reasonable for Sheffield and Barrentine to rely on the medical judgments made by medical professionals responsible for prisoner care."). And, insofar as Deffendall suggests that Nusser should be liable because he supervised Jones and Goines, it's axiomatic that "[s]upervisory officials are not vicariously liable under section 1983 for the unconstitutional acts of their subordinates." *Ingram v.*

*Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022). Nusser, in short, is entitled to summary judgment because he didn't act with gross negligence and wasn't the cause of Deffendall's injuries.[16]

We come out the other way on Nurses Jones and Goines. Deffendall says that, although both Jones and Goines were aware that "[he] was prescribed a prescription narcotic pain reliever" and "was in severe pain," they refused to follow Dr. Bucaj's treatment plan—either by giving him narcotics or by prescribing acetaminophen. Response at 20. The Defendants counter that they "were compelled . . . to follow and implement the dental pain protocol approved by the jail's medical authority, Dr. Silverman," and (they add) that protocol didn't permit them to give inmates narcotics. MSJ at 12. We think the Defendants' argument somewhat misses the mark.

We agree, for instance, that Nurses Jones and Goines weren't deliberately indifferent to Deffendall's rights merely because they followed Dr. Silverman's dental pain protocol and didn't give him a narcotic pain killer. *See, e.g.*, *Bauer v. Kramer*, 424 F. App'x 917, 918–19 (11th Cir. 2011) ("Nurse Gilson was not deliberately indifferent when she carried out Dr. Kramer's medical orders by administering the prescribed medication."); *Lee v. Blackmon*, 2016 WL 749173, at *6 (N.D. Fla. Jan. 22, 2016) (Timothy, Mag. J.) ("Nurses and other such prison personnel are not deliberately indifferent when they reasonably follow the orders of a doctor or other supervisory medical personnel."), *report and recommendation adopted*, 2016 WL 740469 (N.D. Fla. Feb. 24, 2016) (Rodgers, C.J.). And, while the Eleventh Circuit has held that a jail's medical staff cannot refuse to give an inmate a narcotic just because the jail has a "'no narcotics' policy," it also clarified that the staffers' decision to withhold narcotics *isn't* deliberate indifference if it's done as "the result of independent medical judgment." *Kister v. Quality Corr. Health Care*, 2022 WL 3018194, at *5 (11th Cir. July 29, 2022); *see also, e.g.*, *Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 916 (11th Cir. 2017) ("The failure to administer stronger

---

[16] Since Nusser didn't violate Deffendall's constitutional rights, we don't reach the separate question of whether he's entitled to qualified immunity.

medication is generally a medical judgment that is not an appropriate basis for imposing liability."); *Kershaw v. S. Corr. Med.*, 2019 WL 6337440, at *6 (M.D. Ga. Oct. 28, 2019) (Hyles, Mag. J.) ("[A]s discussed above, the refusal to provide Plaintiff with [narcotics] did not stem solely from policy, but from objective findings as to his condition and a belief that more conservative measures would be effective in controlling his pain."), *report and recommendation adopted*, 2019 WL 6329340 (M.D. Ga. Nov. 26, 2019) (Treadwell, J.). The record shows that Nurse Jones contacted *both* Dr. Silverman *and* Dr. Bucaj's office before Deffendall's surgery to determine if Deffendall required a narcotic—and (the parties agree) both Dr. Bucaj and Dr. Silverman confirmed that no narcotic would be necessary. *See* Joint SOF ¶¶ 27–28 (noting that Dr. Bucaj would "stay with jail protocol" and that Dr. Silverman determined that "Mr. Deffendall should be treated as any other inmate and narcotic is not needed"). Since the initial decision not to give Deffendall a narcotic was made pursuant to a reasonable and independent medical judgment, Jones and Goines couldn't have been deliberately indifferent for following that plan.

Where Nurses Jones and Goines run into problems, though, is their failure to act post-surgery—when Deffendall "complained of his pain verbally every time he saw an officer or nurse and in writing at least once per day." Deffendall's SOF ¶ 15; *see also* Defendants' Response SOF ¶ 15 ("Undisputed to the extent this was Deffendall's testimony in this matter on May 23, 2023."). Although Deffendall was given ibuprofen starting on December 16, 2021—the day of his surgery—he didn't receive any additional pain medication until he was administered acetaminophen on December 23, 2021. *See* Joint SOF ¶¶ 29, 39; *see also* Deffendall's Medical Chart [ECF No. 77-9] at 2. If that's true—and, at this stage of the case, we must assume that it is—then Deffendall complained about his constant pain for a whole week before he received any other pain medication to help alleviate his symptoms. The failure to provide effective pain medication—here, the acetaminophen in addition to the ibuprofen—for nearly a week *could* constitute deliberate indifference. *See McElligott v. Foley*, 182

F.3d 1248, 1257 (11th Cir. 1999) ("Despite the repeated complaints about the pain he was suffering from, a jury could find that Dr. Foley and nurse Wagner basically did nothing to alleviate that pain, essentially letting Elmore suffer even as his condition was deteriorating. . . . A jury could conclude that, despite being aware that the medication prescribed for Elmore was not treating the severe pain he was experiencing, Dr. Foley and Wagner did nothing to treat Elmore's pain or respond to the deterioration of his condition.").

True, the Jail's dental pain protocol provides that, when an inmate complains of dental pain, an inmate should be given *either* ibuprofen *or* acetaminophen (but not both). *See* Defendants' SOF ¶ 11 ("The dental pain protocol written by Dr. Silverman to be implemented and followed at the jail provided for Ibuprofen, 400 mg for a month and Tylenol, two tablets, may be substituted."); *see also* Dental Pain Protocol [ECF No. 85-9] at 2 (same). But that same protocol is also clear that, "if [ibuprofen] or Tylenol is inadequate for pain, *notify medical doctor for further orders*." Dental Pain Protocol [ECF No. 85-9] at 2 (emphasis added); *see also* Deffendall's SOF ¶ 19 (same). And the evidence on this last issue—*viz.*, whether Jones or Goines told Dr. Silverman that Deffendall was still complaining of intense pain despite being given ibuprofen—is contested. *See* Deffendall's SOF ¶ 20 ("Nurse Jones did not notify a medical doctor seeking further orders for Deffendall's extreme pain."); Defendants' Response SOF ¶ 20 ("Disputed."); *see also* Goines Deposition [ECF No. 77-1] at 13 ("A: In the event that a doctor needed to be notified, we would have the inmate see the doctor, and the doctor would go from there[.] . . . Q: Did you ever do that with Mr. Deffendall? A: I do not recall."). This contested (and genuinely material) fact precludes us from granting summary judgment for Jones and Goines.

Which brings us to the Defendants' final argument—that Jones and Goines are entitled to qualified immunity because "[t]he care provided to Plaintiff clearly did not 'shock the conscience[.]'" MSJ at 15. But that's not the qualified-immunity standard. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit has held that "failing to provide care, delaying care, or providing grossly inadequate care [which] cause[s] a prisoner to needlessly suffer pain" violates "clearly established" federal law. *Benson v. Gordon Cnty., Ga.*, 479 F. App'x 315, 319 (11th Cir. 2012) (quoting *McElligott*, 182 F.3d at 1257). So, if Jones and Goines failed to follow the Jail's dental pain protocol while Deffendall was complaining of severe pain, they would have violated his "clearly established" rights. *See, e.g., ibid.* ("Yet by failing to provide his medication, she allowed Benson to 'needlessly suffer' from his back pain. Therefore, Rutledge is not entitled to summary judgment on the § 1983 claim on the ground of qualified immunity."); *Melton v. Abston*, 841 F.3d 1207, 1232 (11th Cir. 2016) ("And it is clearly established that a delay in treatment which results in additional pain and suffering constitutes deliberate indifference."); *Sparks v. Fye*, 2015 WL 1401063, at *8 (M.D. Ga. Mar. 26, 2015) (Treadwell, J.) ("Clearly established law provides that prison officials may violate the [Constitution] by failing to treat an inmate's pain."). Since "the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial." *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

*     *     *

After careful consideration, we find that only some of the Medical Indifference Defendants are entitled to summary judgment. We agree with the Defendants that Lieutenant Nusser didn't violate Deffendall's constitutional rights—and that, as a result, he's entitled to summary judgment. We likewise find that Nurses Jones and Goines were following the Jail's dental pain protocol—not to mention the medical advice of Drs. Bucaj and Silverman—when they refused, immediately after the

surgery, to give Deffendall narcotic painkillers. At the same time, however, we conclude that there's a genuine issue of material fact as to whether Jones and Goines properly followed the Jail's dental pain protocol once it became clear that Deffendall's pain wasn't getting any better. And this last question must be resolved at trial.

## Conclusion

Accordingly, we hereby **ORDER and ADJUDGE** that the Defendants' Motion for Summary Judgment [ECF No. 81] is **GRANTED in part** and **DENIED in part** as follows:

1. The MSJ is **DENIED** as to Defendants Stinson, Brown, and Bryant.

2. We **DISMISS** the Plaintiff's claim against Defendant Hamilton because the Plaintiff failed to exhaust his administrative remedies. The Clerk is instructed to **TERMINATE** Defendant Hamilton from the case.

3. The MSJ is **GRANTED** as to Defendant Nusser. Pursuant to FED. R. CIV. P. 58, we'll enter final judgment on this claim separately.

4. The MSJ is **GRANTED in part** and **DENIED in part** as to Defendants Jones and Goines. Summary judgment is **GRANTED** insofar as the Plaintiff cannot argue that Jones and Goines were deliberately indifferent for giving him ibuprofen instead of a narcotic painkiller after the surgery. But summary judgment is **DENIED** as to Deffendall's claim that Jones and Goines failed to inform Dr. Silverman that he was experiencing continuing and severe pain.

**DONE AND ORDERED** in the Southern District of Florida on November 24, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

31