**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 21-cv-14201-ALTMAN/Hunt

**MARK EUGENE DEFFENDALL**,

    *Plaintiff*,

v.

**SGT. KENNETH STINSON**, *et al.*,

    *Defendants*.
_____/

## ORDER

On November 24, 2023, we entered an Order granting in part and denying in part the Defendants' Motion for Summary Judgment (the "MSJ Order"). *See Deffendall v. Stinson*, 2023 WL 8170937 (S.D. Fla. Nov. 24, 2023) (Altman, J.). In our MSJ Order, we denied summary judgment as to Defendants Stinson, Brown, Bryant, Jones, and Goines; granted summary judgment in favor of Defendant Nusser; and dismissed Defendant Hamilton from the case. *See id.* at *16. Unsatisfied with this result, the Defendants ask us to reconsider our MSJ Order and to "enter summary judgment in favor of Jones, Goines, and dismiss[ ] Brown, Stinson, and Bryant." Motion for Reconsideration [ECF No. 105] at 20.[1] Because the Defendants have failed to persuade us that our MSJ Order was clearly erroneous—or that it created some manifest injustice—we **DENY** their Motion for Reconsideration.

### THE LAW

"When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P.

---

[1] The Motion for Reconsideration is fully briefed. *See* Response in Opposition to Motion for Reconsideration ("Response") [ECF No. 108]; Defendants' Reply Memorandum in Support of Their Motion for Reconsideration ("Reply") [ECF No. 109].

54(b). "Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"—like our MSJ Order—"does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Ibid.*

"Although Rule 54(b) does not delineate the parameters of a district court's discretion to reconsider interlocutory orders, [the Eleventh Circuit has] indicated that Rule 54(b) takes after Rule 60(b)." *Herman v. Hartford Life and Accident Ins. Co.*, 508 F. App'x 923, 927 n.1 (11th Cir. 2013) (citing *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990)); *see also id.* at 927–28 ("Reconsideration of [an interlocutory order] is appropriate to correct manifest errors of law or fact, and we will only reverse a district court's recission of its interlocutory order for abuse of discretion." (cleaned up)). Under Rule 60(b), "the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud[,] . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." FED. R. CIV. P. 60(b).

But "[r]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (Gold, J.) (cleaned up). "In order to reconsider a judgment[,] there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* at 1369. "Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct *clear error or manifest injustice*." *Benestad v. Johnson & Johnson*,

2

2022 WL 5239598, at *1 (S.D. Fla. Oct. 4, 2022) (Singhal, J.) (emphasis added & cleaned up). Motions for reconsideration, in other words, "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment. This prohibition includes new arguments that were previously available, but not pressed." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (cleaned up); *see also Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) ("It is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through—rightly or wrongly." (cleaned up)).

## ANALYSIS

### I. Defendants Jones and Goines

The Defendants first say that we made three mistakes in denying Jones's and Goines's requests for summary judgment: (1) that we allowed Deffendall to "assert a new theory of liability at the summary judgment stage," Motion at 6; (2) that we applied the wrong legal standard by failing to consider whether "the medical care provided by Jones and Goines . . . was so grossly incompetent as to shock the conscience," *id.* at 11 (cleaned up); and (3) that we erred in finding that Jones and Goines weren't entitled to qualified immunity because (they say) no case suggests that "the Defendants violated clearly established law," *id.* at 12. We'll address (and reject) each of these arguments in turn.

*First*, Deffendall didn't constructively amend his claims against Jones and Goines in his summary-judgment briefing. The Defendants claim that "this lawsuit has always been about whether the defendants were deliberate indifferent [sic] by not following the post operative treatment prescribed by outside dentist Dr. Bucaj, and NOT whether the defendants were deliberately indifferent based on [whether Jones and Goines properly followed the jail's dental-pain protocol]." *Id.* at 3. In the Defendants' view, "Plaintiff's deliberate indifference to serious medical needs claim has been predicated on and limited to the fact that Defendants did not follow [Dr. Bucaj's] post operative treatment plan for pain"—and so (they insist), Deffendall shouldn't have been allowed, at summary

3

judgment, to claim that Jones and Goines *also* failed to follow the Indian River County Jail's dental-pain protocol. *Id.* at 5.

The Defendants are right that Deffendall can't "amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). But that's not what he did. In his Amended Complaint, Deffendall alleged that Jones and Goines "acted *in contravention to county jail policy* and the constitutional rights of the Plaintiff when . . . [they] failed to provide medical care to the Plaintiff[.]" Amended Complaint [ECF No. 14] at 7 (emphasis added); *see also id.* at 10–11 ("[Defendants] refused to implement the surgeon's treatment plan purposely withholding the required medication and probiotics prescribed to the Plaintiff. . . . [Defendants'] refusal, and [their] total disregard for the Plaintiff's complaints, caused the Plaintiff undue and unnecessary pain and suffering.").[2]

While Deffendall's Amended Complaint never *explicitly* said that Jones and Goines "failed to follow the jail's own protocol for dental pain in that they did not contact the jail's medical authority, Dr. Silverman, for further orders when the Ibuprofen was not alleviating his pain," Motion at 3, a party only "impermissibly asserts a new claim at the summary judgment stage [if he] asserts new facts that would provide a new theory of recovery," *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 548 F. Supp. 3d 1269, 1277 (S.D. Fla. 2021) (Williams, J.) (quoting *Arthur v. Thomas*, 2014 WL 466143, at *4 (M.D. Ala. Feb. 5, 2014) (Fuller, J.)). And Deffendall's factual allegations have remained consistent throughout the pendency of this litigation: He's always said that he was in pain from a dental

---

[2] Although Deffendall is now represented by counsel, he filed his Amended Complaint *pro se*. *See generally* Amended Complaint. We thus agree with Deffendall that his *pro se* pleading "must be looked at in a 'more charitable light'" and "liberally construed." Response at 6 (quoting *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (cleaned up)).

procedure, that Jones and Goines knew he was in pain, that Jones and Goines knew about a specific treatment that would alleviate Deffendall's pain, and that Jones and Goines deliberately decided *not* to pursue that treatment plan.

Deffendall's failure to describe, until summary judgment, *exactly* how the Defendants violated the Jail's treatment policies doesn't mean that he failed to give them adequate notice of his claim. *See, e.g.*, *Sams v. United Food & Com. Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989) ("A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests."). He, after all, has alleged from the outset that Jones and Goines *knew* they were required to treat his pain (because of Dr. Bucaj's orders, "county jail policy," or some other obligation) but *deliberately* failed to do so. And that was sufficient to put the Defendants on notice here. *See Hodges v. Sch. Bd. of Orange Cnty., Fla.*, 2012 WL 5051923, at *4 (M.D. Fla. Oct. 18, 2012) (Honeywell, J.) ("Here, Plaintiffs are not attempting to assert an entirely new claim that is not contained in the operative complaint. Rather, Plaintiffs are asserting additional facts to support their existing claim of retaliation.").[3] Because

---

[3] We acknowledge the Defendants' point that, in the Amended Complaint, Deffendall's *specific* deliberate-indifference claim was that Jones and Goines "would not carry out [Dr. Bucaj's] orders for treatment, e.g. administer prescribed medications and probiotics," Amended Complaint at 10–11— not that Jones and Goines failed to follow the dental-pain protocol established by Dr. Silverman, *see* Reply at 4 ("Plaintiff's allegation that the Defendants 'acted in contravention of county policy' in the context of the factual allegations . . . absolutely cannot reasonably be read to capture the factual issue of whether the Defendants complied with Dr. Silverman's protocol for dental pain."). But the undisputed evidence is that Dr. Bucaj *adopted* the Jail's dental-pain protocol as part of his post-operative treatment plan for Deffendall. *See, e.g.*, Joint Statement of Undisputed Facts [ECF No. 79] ¶ 27 ("Nurse Jones wrote a medical note indicting [sic] that she spoke to Heather at Dr. Bucaj's office . . . [Heather] stated that [Dr. Bucaj's office] will stay with jail protocol."); Dr. Bucaj Deposition Tr. [ECF No. 77-3] at 13:21–24 ("Q: And would you typically follow the jail's protocol as far as what medication you would allow or recommend the person take related to their dental care? [Dr. Bucaj]: With [Deffendall] it was—yeah."); *see also* Defendants' Statement of Material Facts [ECF No. 80] ¶ 11 ("The dental pain protocol written by Dr. Silverman to be implemented and followed at the jail provided for Ibuprofen, 400 mg for a month and Tylenol, two tablets, may be substituted."); *id.* at 25:18–23 ("Q: But if [a patient] didn't receive a narcotic, though, what would be the alternative to that? . . . A: If they chose not to, then they can simply go and take anti-inflammatories, which is going to be over-the-counter Aleve or aspirin [or ibuprofen] rotated with Tylenol."). Dr. Bucaj, in short,

Deffendall's allegation that Jones and Goines failed to follow the dental-pain protocol is merely a refinement of his original deliberate-indifference claim—not, as the Defendants imply, an entirely new theory of liability—he didn't constructively amend the Amended Complaint in his summary-judgment briefing.

*Second*, our MSJ Order applied the correct legal standard to Deffendall's deliberate-indifference-to-serious-medical-needs claim. In that order, we described the three elements of a deliberate-indifference claim as follows: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than negligence." *Deffendall*, 2023 WL 8170937, at *13 (cleaned up & quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)). The Defendants insist that we should've relied on *Hoffer v. Secretary, Florida Department of Corrections*, 973 F.3d 1263 (11th Cir. 2020), where the Eleventh Circuit held that, for a prison official to be held liable for deliberate indifference, he must have acted "with more than *gross negligence*"—not more than *mere* negligence. *Id.* at 1270 (emphasis added). And, the Defendants continue, if we'd applied *Hoffer*'s more-than-gross-negligence standard, we wouldn't have let a jury decide whether "the medical care provided by Jones and Goines to treat Deffendall's pain post oral surgery" constituted deliberate indifference. Motion at 11.

In saying so, the Defendants *have* identified an unresolved legal issue in our Circuit: Does deliberate indifference require a showing of more than mere negligence or of more than gross negligence? On May 22, 2023, the Eleventh Circuit briefly resolved this question (before it vacated its decision and took the issue *en banc*) when it held that, "[t]o make out the subjective component of an Eighth Amendment deliberate-indifference claim, a plaintiff must establish that the defendant . . . acted with more than *gross* negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023), *vacated*

---

ordered that Deffendall be treated pursuant to the Jail's dental-pain protocol. So, by alleging that Jones and Goines failed to follow Dr. Bucaj's orders, Deffendall reasonably placed the Defendants on notice that they hadn't properly followed the Jail's dental-pain protocol.

*and reh'g en banc granted sub nom. Wade v. Ga. Corr. Health, LLC*, 83 F.4th 1332 (11th Cir. 2023). Of course, with *Wade* now vacated, we're left with "a jumble," as different panels of the Eleventh Circuit "have pitched back and forth—and back and forth and back and forth—between the 'more than mere negligence' and 'more than gross negligence' standards for the better part of the last three decades." *Id.* at 1371–72. To make matters worse, the Eleventh Circuit held in *Hoffer*—the same case the Defendants hold up as the gold standard—that "[t]hese competing articulations—'gross' vs. 'mere' negligence—may well represent a distinction without a difference because . . . the Supreme Court itself has likened the deliberate-indifference standard to 'subjective recklessness as used in the criminal law.'" 973 F.3d at 1270 n.2 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994)).[4]

The upshot is that it doesn't much matter what the standard is because there remains an unresolved issue of material fact as to whether Jones and Goines acted with a sufficiently reckless state of mind. Deffendall (recall) alleged that he "complained of his pain verbally every time he saw an officer or nurse and in writing at least once per day" from December 16, 2021 (when he was first given ibuprofen) until "he was administered acetaminophen on December 23, 2021." *Deffendall*, 2023 WL 8170937, at *14. We found that, *if* these allegations are true, "Deffendall complained about his constant pain for a whole week before he received any other pain medication to help alleviate his symptoms," and we held that "[t]he failure to provide effective pain medication—here, the acetaminophen in addition to the ibuprofen—for nearly a week *could* constitute deliberate

---

[4] During the *en banc* argument in *Wade*, Chief Judge Pryor suggested that the court might eliminate the negligence-gross negligence element altogether. *See* Oral Argument at 44:36–45:13, *Wade v. Ga. Corr. Health, LLC*, No. 21-14275 (11th Cir. Feb. 13, 2024) ("[Appellant's Counsel]: Your Honors, the parties agree that the *Farmer* test is two parts and does not include a free-standing element of [negligence] . . . . [Chief Judge Pryor]: And [the Court] can apply that [two-part standard]—send it back to the panel and apply the standard. . . . And forget about this negligence versus gross negligence stuff because it's just not part of the test, right? [Appellant's Counsel]: Exactly, Your Honor."). While the Eleventh Circuit's apparent desire to hew more closely to the deliberate-indifference test the Supreme Court laid out in *Farmer* probably means that this fight over negligence versus gross negligence is much ado about nothing, we'll still address the Defendants' argument directly because—as of this writing—the "more than negligence/gross negligence" element is still part of the law in our Circuit.

indifference." *Ibid.* (citing *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999)). And that's true even if the standard is "more than gross negligence" because a jail official's failure to give any form of relief to an inmate who, for a whole week, is constantly complaining of pain is "the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate." *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996); *see also Ireland v. Prummell*, 53 F.4th 1274, 1287–88 (11th Cir. 2022) (reiterating that an official's actions may "amount[ ] to more than gross negligence" if he or she "delay[s] the treatment of serious medical needs" for an unreasonable length of time (citing *McElligott*, 182 F.3d at 1255)).[5]

A defendant acts with deliberate indifference when he knowingly withholds pain medication from an inmate who clearly needs it. *See McElligott*, 182 F.3d at 1257 ("Insofar as Elmore's pain was concerned, a jury could find that the medication provided to Elmore was so cursory as to amount to no care at all. A jury could conclude that, despite being aware that the medication prescribed for Elmore was not treating the severe pain he was experiencing, Dr. Foley and Wagner did nothing to treat Elmore's pain or respond to the deterioration of his condition."). And, since "there's a genuine issue of material fact as to whether Jones and Goines properly followed the Jail's dental pain protocol once it became clear that Deffendall's pain wasn't getting any better," *Deffendall*, 2023 WL 8170937, at *15, we were right to deny summary judgment if (as is the case here) the parties genuinely dispute

---

[5] The Defendants maintain that they *couldn't* have acted with deliberate indifference since the "[f]ailure to follow procedures"—in this case, the Jail's dental-pain protocol—"does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Motion at 7 n.3 (quoting *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000)). But Deffendall doesn't merely allege that the Defendants failed to follow the technical requirements of the dental-pain protocol. As we've said, Deffendall asserts that he complained about pain every day for a whole week, that the Defendants knew about his pain, and that they unjustifiably refused to do anything to help him *despite* the presence of a policy that could have provided him with much-needed relief. *See, e.g., Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1323 n.27 (11th Cir. 2016) ("But more than just a failure to follow procedure has been alleged in the present case. That allegation is coupled with the allegations that the defendant officials knew about Merkerson's severe and documented mental illness, his violent behavior, and his recent assault on a cellmate, and it is those allegations together that form the basis for the claim."). That's sufficient to get to trial on Deffendall's deliberate-indifference claim.

whether the Defendants took *any* action to alleviate Deffendall's pain during the week in which he was suffering.

*Third*, Jones and Goines aren't entitled to qualified immunity. To overcome a qualified-immunity defense, a plaintiff must (1) allege facts that, "if true, establish a constitutional violation" and (2) show that "the right violated was 'clearly established.'" *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010). According to the Defendants, Deffendall failed to show that "the right involved was clearly established at the time of the putative misconduct," and they contend that we relied on several cases that "are not applicable" to the right at issue here (*viz.*, deliberate indifference to Deffendall's dental pain). Motion at 12.[6] We disagree.

A right is "clearly established" when, "at the time of the officer's conduct, 'the law was sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1272 (11th Cir. 2021) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). A right can become clearly established in one of three ways: (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle [controls] the novel facts of the situation"; or (3) "the conduct involved in the case . . . so obviously violate[s] the constitution that prior case law is unnecessary." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012).

---

[6] The Defendants also claim that "Deffendall completely failed to address qualified immunity in his Response," so he didn't "alleg[e] facts that establish that the Defendants violated his constitutional rights[.]" Motion at 12. But the law only requires us to "decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (cleaned up). Deffendall obviously met this very low burden. *See Deffendall*, 2023 WL 8170937, at *14 ("If [Deffendall's allegation is] true—and, at this stage of the case, we must assume that it is—then Deffendall complained about his constant pain for a whole week before he received any other pain medication to help alleviate his symptoms. The failure to provide effective pain medication—here, the acetaminophen in addition to the ibuprofen—for nearly a week could constitute deliberate indifference."). Contra the Defendants' position here, Deffendall's failure to use the phrase "qualified immunity" in his briefing doesn't mean that he acceded to that defense—especially because he properly asserted facts that, if true, would overcome that defense. *Cf. Brooks v. United States*, 723 F. App'x 703, 705 (11th Cir. 2018) ("But motion practice is not talismanic, and we do not require petitioners to recite magic words.").

Only the United States Supreme Court, the Eleventh Circuit, and the Florida Supreme Court can "clearly establish" the law for purposes of qualified immunity. *Ibid.*[7] To show that a case is "materially similar," we ask whether the "existing precedent [has] placed the constitutional question beyond debate." *Wade v. United States*, 13 F.4th 1217, 1226 (11th Cir. 2021) (cleaned up). Although the case "need not be 'directly on point,'" we must be sure to compare the "particularized facts" of each case because "minor variations between cases may prove critical." *Ibid.* (cleaned up).

In denying qualified immunity, we relied on two published Eleventh Circuit cases: *McElligott* and *Melton v. Abston*, 841 F.3d 1207 (11th Cir. 2016). *See Deffendall*, 2023 WL 8170937, at *15.[8] Based on these cases, we concluded that "[t]he Eleventh Circuit has held that failing to provide care, delaying care, or providing grossly inadequate care which causes a prisoner to needlessly suffer pain violates clearly established law." *Ibid.* (cleaned up). The Defendants say that neither *McElligott* nor *Melton* clearly establishes this principle because these cases "could not be more different than the facts in the case at hand." Motion at 13. Again, we disagree.

The Defendants are right, of course, that the facts of *McElligott* and *Melton* aren't *identical* to ours. For one thing, neither case was about the failure to treat dental pain—though neither limited its

---

[7] "Unpublished cases, however, do not serve as binding precedent, and cannot be relied upon to define clearly established law." *J.W. ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018).

[8] True, we also cited two cases that don't "clearly establish" this right: an unpublished Eleventh Circuit opinion, *Benson v. Gordon County, Georgia*, 479 F. App'x 315 (11th Cir. 2012); and a district court opinion, *Sparks v. Fye*, 2015 WL 1401063 (M.D. Ga. Mar. 26, 2016) (Treadwell, J.). But we cited these cases, not because they clearly established any rights, but because they showed that other courts (including a panel of the Eleventh Circuit) have interpreted the Eleventh Circuit's cases in the same way we did. We cited them, in other words, because they took (as we did) *McElligott* and *Melton* to mean that the law in our Circuit *is* "clearly established" that prison officials violate the Constitution when they, for days, deliberately ignore an inmate's pain. *See Benson*, 479 F. App'x at 319 ("[The plaintiff] has put forth evidence that he went without pain medication for days. Rutledge knew Benson was in pain and that a physician had prescribed medication for that pain. Yet by failing to provide his medication, she allowed Benson to 'needlessly suffer' from his back pain. Therefore, Rutledge is not entitled to summary judgment on the § 1983 claim on the ground of qualified immunity."); *Sparks*, 2015 WL 1401063, at *8 ("Clearly established law provides that prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain." (cleaned up)).

scope to complaints of, for instance, stomach (rather than tooth) pain. For another, the inmates in *McElligott* and *Melton* complained about their pain for months—not days. *See, e.g.*, *McElligott*, 182 F.3d at 1257 ("Despite the repeated complaints about the [abdominal] pain he was suffering from, a jury could find that Dr. Foley and nurse Wagner basically did nothing to alleviate that pain, essentially letting Elmore suffer even as his condition was deteriorating."); *Melton*, 841 F.3d at 1225 ("Next, a reasonable jury could also find that Dr. Sullivan acted with deliberate indifference to Melton's injury and resulting pain. Most notably, Dr. Sullivan did not even meet with Melton in person until approximately eight months after his injury. Even then, Dr. Sullivan never examined Melton's arm despite knowing it was fractured and painful."). Still, these cases unambiguously stand for the basic proposition (*i.e.*, they "clearly establish") that a jail official cannot "cause a prisoner to needlessly suffer the pain resulting from his or her illness" by "failure to provide care" or by "delaying care." *McElligott*, 182 F.3d at 1257. And we cannot simply ignore these cases just because the inmates there were suffering longer. *Cf. Melton*, 841 F.3d at 1227–28 ("Our decision in *McElligott* also clearly established Melton's right to timely treatment. . . . While [*McElligott*] do[es] not address facts *identical* to those in this case, our Circuit precedent makes clear that Dr. Sullivan is not entitled to qualified immunity." (emphasis added)).[9]

It's therefore unsurprising that courts in our circuit have repeatedly held that a jail's knowing failure to provide an inmate with effective pain relief for days violates "clearly established" law. *See, e.g.*, *Danley v. Allen*, 540 F.3d 1298, 1312–13 (11th Cir. 2008) ("The allegations in the complaint are that the jailers took only ineffective measures to remedy the [effects of pepper spray] and then mocked

---

[9] Other published Eleventh Circuit cases likewise "clearly establish" this right. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1331 (11th Cir. 2007) ("Captain Weaver's alleged inaction [for one day] is of the type that we have held violates the well established right of prisoners to timely treatment for serious medical conditions."); *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994) ("At the time of Harris' incarceration, it was clearly established that knowledge of the need for medical care and intentional refusal to provide that care [for one-and-a-half months] constituted deliberate indifference.").

11

Danley and ignored his pleas for help [for twenty minutes] . . . . Although Danley's allegations may later turn out to be unfounded, reasonable jailers would have been aware that the conduct that Danley alleges violated his clearly established rights."); *Benson*, 479 F. App'x at 319 (holding that the failure to provide pain medication "for days" violated "clearly established law"); *Sparks*, 2015 WL 1401063, at *8 (same); *Edwards v. Abbett*, 2020 WL 6395454, at *6–7 (M.D. Ala. Nov. 2, 2020) (Thompson, J.) ("There are several statements of general principles in Eleventh Circuit case law . . . that clearly established that a jail official's deliberately indifferent failure to provide treatment for an inmate's serious pain [for five hours and fifty-five minutes] violates the Eighth Amendment."); *Hardy v. Ga. Dep't of Corr.*, 2021 WL 3610466, at *12–13 (S.D. Ga. Aug. 13, 2021) (Hall, C.J.) ("Additionally, the Eleventh Circuit has recognized that prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain [for two weeks] . . . The facts do not have to be identical to clearly establish a right."); *Henegar v. Ga. Corr. Health, LLC*, 2021 WL 11133945, at *13 (N.D. Ga. Sept. 30, 2021) (Totenberg, J.) ("[T]he evidence could suggest that the jail nurse provided grossly inadequate care by failing to give him pain medication *for days* at a time or by merely coming to his cell and offering medication that Benson could not retrieve, thus violating the plaintiff's constitutional rights by being deliberately indifferent to his serious medical needs." (emphasis added)).

Against all this, the Defendants say only that "[n]one of the cited cases put Jones and Goines on notice that it was unconstitutional for them not to call the jail physician for further orders when pain medication in the form of Ibuprofen 800 mg was given to Deffendall pursuant to the dental protocol, [and] when [Deffendall] complained that Ibuprofen 800 mg was not working Nurse Jones immediately substituted Tylenol 500 mg[.]" Motion at 14–15. Here, again, they miss the point. The evidence at trial may very well vindicate the Defendants' belief that they promptly provided Deffendall with acetaminophen once they realized that the ibuprofen wasn't working. But this is summary judgment, not trial, and we found this factual issue—how quickly Jones and Goines responded to

Deffendall's complaints of pain—is *both* material *and* highly disputed. *See Deffendall*, 2023 WL 8170937, at *15 ("And the evidence on this last issue—*viz.*, whether Jones or Goines told Dr. Silverman that Deffendall was still complaining of intense pain despite being given ibuprofen—is contested. This contested (and genuinely material) fact precludes us from granting summary judgment for Jones and Goines." (cleaned up)). The point is this: If Deffendall's allegations are true, then Jones and Goines violated Deffendall's "clearly established" constitutional right, and they aren't entitled to qualified immunity. *See Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("But if the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial."), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

\* \* \*

To recap, then, Deffendall didn't constructively amend his Amended Complaint; Jones's and Goines's alleged failure to treat Deffendall's pain satisfied the "more than gross negligence" standard; and Jones and Goines aren't entitled to qualified immunity. Because the Defendants failed to show that the MSJ Order was suffused with "clear error" (or that it was "manifestly unjust"), we see no reason to reconsider our ruling.[10]

## II.   Defendants Stinson, Brown, and Bryant

In their Motion, the Defendants also contend that we should've dismissed Stinson, Brown, and Bryant from the case because Deffendall failed to exhaust his administrative remedies against them. As they see it, our finding that Deffendall failed to exhaust his remedies against Defendant Hamilton essentially required us to find that he likewise failed to exhaust as to Stinson, Brown, and

---

[10] At a hearing on February 13, 2024, counsel for the Defendants informed us that, if we denied this part of the Motion, he would "immediately" file an interlocutory appeal with the Eleventh Circuit. Since an interlocutory appeal would halt any future trial proceedings as to Defendants Jones and Goines, we **DENY as moot** the Defendants' Motion for Reconsideration of Request for Change of Venue to Fort Pierce [ECF No. 119].

Bryant. *See* Motion at 17 ("The Court's finding that Deffendall did not exhaust the available remedies before bringing this claim against Stinson, Brown, Bryan [sic], and Hamilton . . . dictates that the entire failure to protect claim must be dismissed, and not only against Hamilton. That is so because an inmate cannot bring any action if it has been found that he failed to exhaust that claim as to *any defendant*, including defendants who did not even raise the defense, as well as unserved defendants."). Deffendall reminds us that this is the *third time* the Defendants have argued "that [he] failed to exhaust his administrative remedies" and that reconsideration isn't an appropriate vehicle "to instruct the court on how the court could have done it better[.]" Response at 13–14 (cleaned up). Deffendall is, of course, right. We've already ruled on this issue multiple times, and the Defendants cannot use a motion for reconsideration to "ask the Court to rethink what the Court already thought through—rightly or wrongly." *Z.K. Marine Inc.*, 808 F. Supp. at 1563 (cleaned up). Still, in the interest of completeness, we'll explain for the third (*and final*) time why we aren't dismissing Deffendall's claims against Stinson, Brown, and Bryant.

The Prison Litigation Reform Act ("PLRA") "*mandates* that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016) (emphasis added & quoting 42 U.S.C. § 1997e(a)). "[T]hat mandatory language means a court may not excuse a failure to exhaust[.]" *Id.* at 639. All that said, the Supreme Court has been clear that "the PLRA exhaustion requirement is not jurisdictional[.]" *Woodford v. Ngo*, 548 U.S. 81, 101 (2006); *accord Bryant v. Rich*, 530 F.3d 1368, 1374 n.10 (11th Cir. 2008) ("The Supreme Court has confirmed that exhaustion under the PLRA is not a jurisdictional perquisite."). And that's important because "jurisdictional rules" differ in salient ways from non-jurisdictional rules—also known as "claim-processing rules." A jurisdictional rule "properly applies only to prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) implicating [the court's adjudicatory authority]." *Santiago-Lugo v. Warden*, 785 F.3d 467, 472 (11th Cir.

14

2015) (cleaned up). By contrast, claim-processing rules, "such as exhaustion requirements," promote "the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Ibid.* (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). And the PLRA's exhaustion requirement is a claim-processing rule. *See ibid.* ("Examples of non-jurisdictional rules, on the other hand, include 'claim-processing rules,' such as exhaustion requirements[.]"); *see also Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 208 (2d Cir. 2007) ("[T]he exhaustion requirement in the [PLRA] is a claim-processing rule because the requirement affects a prisoner's preexisting claims—brought under different statutes such as 42 U.S.C. § 1983—and thus exhaustion is not 'essential to the existence of the claim.'" (quoting *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003))); *Brown v. GEO Grp., Inc.*, 2021 WL 4976333, at *6 (S.D. Fla. Aug. 18, 2021) (Reid, Mag. J.) ("Furthermore, this Circuit considers the [PLRA's] administrative exhaustion requirement to be a non-jurisdictional claim-processing rule." (citing *Santiago-Lugo*, 785 F.3d at 472)), *report and recommendation adopted*, 2021 WL 3927379 (S.D. Fla. Sept. 2, 2021) (Rosenberg, J.).

The biggest difference for our purposes between a jurisdictional rule and a claim-processing rule is that the latter *can be waived or forfeited. See Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81–82 (2009) ("Subject-matter jurisdiction properly comprehended, we emphasized, refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived. In contrast, a claim-processing rule, *even if unalterable on a party's application*, does not reduce the adjudicatory domain of a tribunal and is ordinarily forfeited if the party asserting the rule waits too long to raise the point." (emphasis added & cleaned up)); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 (2017) ("Mandatory claim-processing rules are less stern [than jurisdictional rules]. If *properly invoked*, mandatory claim-processing rules must be enforced, but they may be waived or forfeited." (emphasis added)); *United States v. DiFalco*, 837 F.3d 1207, 1217 (11th Cir. 2016) ("[U]nlike a jurisdictional rule, a claim-processing rule can be forfeited by a party.").

And Defendants Stinson, Brown, and Bryant unambiguously forfeited their right to assert an exhaustion defense—a claim-processing rule—in this case. These Defendants (remember) first moved to dismiss Deffendall's Amended Complaint on exhaustion grounds in a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). *See* [ECF No. 67]. We denied that motion in three steps. *First*, we applied the Eleventh Circuit's decision in *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), which held that "exhaustion defenses 'should be decided in a Rule 12(b) motion to dismiss'" because "exhaustion of administrative remedies is a matter of abatement and not generally an adjudication on the merits[.]" Order Denying Motion for Judgment on the Pleadings ("MJP Order") [ECF No. 76] at 2 (quoting *Bryant*, 530 F.3d at 1375). *Second*, we recognized that Defendants Stinson, Bryant, and Brown had "already filed a Rule 12(b)(6) motion to dismiss, in which they argued that Deffendall's claims were barred by the statute of limitations." *Ibid.* (cleaned up). This was a big problem for the Defendants, we explained, because Rule 12(g)(2) "forbids a defendant from filing a second Rule 12 motion that 'raises a defense or objection that was available to the party but omitted from its earlier motion.'" *Id.* at 3 (cleaned up & quoting FED. R. CIV. P. 12(g)(2)); *see also Lane v. XYZ Venture Partners, LLC*, 322 F. App'x 675, 678 (11th Cir. 2009) ("[W]aiver is only accomplished if the defense is not asserted in the first motion made under Rule 12 or responsive pleading.").[11] *Third*, we applied *Brooks v. Warden*, 706 F. App'x 965 (11th Cir. 2017)—an unpublished Eleventh Circuit decision that was "strikingly similar" to ours—and found that "Rule 12(g)(2) prevented [the Defendants] from raising [their] exhaustion defense for the first time in a second Rule 12 motion." MJP Order at 3 (citing *Brooks*, 706 F. App'x at 969). We, in short, agreed with the Eleventh Circuit's decision in *Brooks* that a "PLRA exhaustion defense" doesn't fall within the enumerated exceptions of Rule 12(h)(2) and (3) because exhaustion "is independent of the merits of the plaintiff's claim" and "is not jurisdictional."

---

[11] Defendant Hamilton, by contrast, was served only *after* the Defendants' first Rule 12 motion was filed, so he "couldn't have waived his exhaustion defense under Rule 12(g)(2) because he never joined the earlier Rule 12(b) motion." *Deffendall*, 2023 WL 8170937, at *9.

16

*Brooks*, 706 F. App'x at 969 (first citing *Bryant*, 530 F.3d at 1376 n.12; and then citing *Woodford*, 548 U.S. at 101). We stand by every part of that analysis.

In the face of all this, the Defendants advance three counterarguments—all meritless. *First*, they criticize our reliance on *Brooks*, "which is not binding" and which (they say) impermissibly "carv[ed] out an exception to the PLRA's mandatory [exhaustion] requirement, where Congress did not provide for one." Motion at 17. We've already explained why we found *Brooks* persuasive: because it's "virtually identical" to our case; because "courts around our Circuit have consistently applied *Brooks*" in the way we do here; and because it properly applies the plain language of Rule 12(g)(2) to a waivable claim-processing rule the Defendants invoked for the first time in a successive Rule 12(b) motion. MJP Order at 4–5. As we've said, *Brooks* didn't create an "exception" to the PLRA's exhaustion requirement; it simply applied a principle the Supreme Court and the Eleventh Circuit have repeatedly endorsed: that, "as a non-jurisdictional claim processing rule, the exhaustion defense is subject to forfeiture under Rule 12(g)(2)." *Brooks*, 706 F. App'x at 969–70 (citing *Union Pac. R.R.*, 558 U.S. at 81–82). That's pretty straightforward and (to our mind) uncontroversial.

*Second*, the Defendants say that Deffendall "cannot bring any action if it has been found that he failed to exhaust that claim as to any defendant[.]" Motion at 17. They insist, in other words, that we must dismiss Deffendall's claim against Stinson, Brown, and Bryant *because* we dismissed his claim against Hamilton. For this proposition, the Defendants cite four cases: *Bure v. Miami-Dade Corrections Department*, 507 F. App'x 904 (11th Cir. 2013); *Tilus v. Kelly*, 2012 WL 12894237 (S.D. Fla. Mar. 22, 2012) (White, Mag. J.), *report and recommendation adopted*, 2012 WL 12894238 (S.D. Fla. Apr. 9, 2012) (Cohn, J.), *aff'd*, 510 F. App'x 864 (11th Cir. 2013); *Kingcade v. Parker*, 949 F. Supp. 2d 1232 (S.D. Fla. 2013) (Altonaga, J.); and *Pace v. Lewis*, 2021 WL 3485653 (S.D. Fla. Apr. 29, 2021) (O'Sullivan, Mag. J.), *report and recommendation adopted sub nom.*, *Pace v. Lawerance*, 2021 WL 3485651 (S.D. Fla. July 13, 2021) (King, J.). But these cases stand for the unremarkable proposition that, if a district court finds

17

that a plaintiff has failed to exhaust his administrative remedies as to one defendant, it *can infer* that the exhaustion defense *also* applies to other defendants who hadn't yet raised it. *See Bure*, 507 F. App'x at 906 ("The district court also properly dismissed Bure's motion to add Nottage as an additional defendant. Bure cannot bring any claims relating to the incident because he failed to exhaust his administrative remedies[.]"); *Tilus*, 2012 WL 12894237, at *10 ("Since Plaintiff cannot now cure his failure to exhaust relating to the claim in his complaint, as amended, against the present defendants, this suit as to all defendants is forever barred."); *Kingcade*, 949 F. Supp. 2d at 1235 ("[T]he Court finds Kingcade has failed to demonstrate he exhausted his administrative remedies; thus, the claim against Mimoso is frivolous as it suffers from the same jurisdictional defect as do his claims against Defendants Headley and Jackson."); *Pace*, 2021 WL 3485653, at *10 ("Notably, Lt. M.P. and Jane Doe have not been served, as unexecuted returns were filed as to these two Defendants. . . . At this juncture, however, for the reasons stated in relation to the Defendants' Motion to Dismiss, the Amended Complaint should also be DISMISSED WITH PREJUDICE as to Defendants, M.P., Jane Doe, and Duke based on Plaintiff's failure to exhaust administrative remedies."). None of these cases involved defendants who had *forfeited* their exhaustion defenses, and there's no reason to apply these cases where (as here) the unambiguous text of Rule 12(g)(2) plainly governs. *See Brooks*, 706 F. App'x at 969 ("In sum, then, because Deputy Powell failed to raise the exhaustion defense in his first motion to dismiss—and because neither exception to Rule 12(g)(2) applies—he has forfeited the ability to raise the defense now, and the District Court *should not have considered it*." (emphasis added)).

*Third*, the Defendants say that the "plaintiff [didn't] suffer prejudice from the omission" because they "raised the [exhaustion] defense in their Answer filed on October 18, 2022, only 40 days after being served[.]" Motion at 18–19. The Defendants are really confusing things here. The standard they're talking about applies to affirmative defenses a party advances under Rule 8(c). *See Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350 (11th Cir. 2007) ("In deciding waiver issues under Rule 8(c),

this Court in some cases has examined whether a plaintiff had notice of the unpled defense or was prejudiced by the lack of notice."). And they're right that "[f]ailure to exhaust under the PLRA [is] an affirmative defense[.]" *Bryant*, 530 F.3d at 1374 n.9. But the Eleventh Circuit has *explicitly* said that the affirmative defense of "exhaustion should be decided in a Rule 12(b) motion to dismiss[.]" *Id.* at 1375. In other words, Rule 12(g)(2)'s rule against successive 12(b) motions—not the "prejudice" standard that applies to *other* affirmative defenses under Rule 8(c)—governs the exhaustion inquiry.

\* \* \*

We therefore reaffirm our decision *not* to dismiss Defendants Stinson, Brown, and Bryant from the case. These Defendants have forfeited their exhaustion defense under Rule 12(g)(2), and we won't spill more ink on a subject that's been over-briefed and over-argued.

## CONCLUSION

After careful review, we hereby **ORDER and ADJUDGE** that the Defendants' Motion for Reconsideration of our MSJ Order [ECF No. 105] is **DENIED**. The Defendants' Motion for Reconsideration of Request for Change of Venue to Fort Pierce [ECF No. 119] is **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on March 18, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record